Case number 20-5396 Alliance WOR Properties LLC versus Illinois Methane LLC. Arguments not to exceed 15 minutes per side. Mr. Scheer, you may proceed for the appellant. Thank you. May it please the court. My name is Tom Scheer. Excuse me. I'm appearing for LLC, the appellant here. We've asked to reserve three minutes for rebuttal, if that's appropriate, with the court. Yes. Thank you. I begin by saying we believe that the courts below erred in three respects. First, in failing to find that Illinois Methane was an was appropriate and satisfied due process. Secondly, that that issue was raised appropriately before the bankruptcy court and was not waived as the district court found when it failed to consider that argument in the initial appeal to the district court. And finally, that the bankruptcy court and district court erred in failing to follow an earlier ruling made by the bankruptcy court in the case Geese v. Community Trust, which was appealed to the bankruptcy appellate panel for the Sixth Circuit and affirmed. And that decision was also affirmed by the Sixth Circuit in which publication notice was approved and the orders of sale and the orders approving confirmation of the Horizon Bankruptcy Plan were approved. The relief that we're asking for is that the court reverse the bankruptcy court and find that publication notice was appropriate and satisfied due process. So if I can, I'd like to begin with that first issue, which is why publication notice was appropriate and should have been so found by the bankruptcy court. To give some context, we're talking about a bankruptcy case that was filed in 2002 and confirmation and sale orders that were approved in 2004. Those orders approving the bankruptcy sale of all the assets of the Horizon debtors and confirming those liquidating plans had typical orders of confirmation and approving sale in many bankruptcy cases. That is, there was a broad and expansive sale, free and clear of liens, encumbrances, and interests and an order approving that. The order of sale and confirmation also included an injunction against asserting claims against the purchaser. Actually, there were two were entitled to the protections of Section 363M of the Bankruptcy Code, and Section 363M provides that a sale order is not subject to reversal or modification on appeal if the buyer is a good faith buyer subject to one condition. I'm sorry. So I understand all that, and all that seems to imply there is a strong interest in finality in bankruptcy proceedings. Is it your contention, though, that the strong interest in finality would extinguish any claimant's due process right? Surely the question is whether sufficient process, sufficient notice was given, not that finality interest in bankruptcy trumped the constitutional interest in notice, right? Well, there are two answers to that, Judge Larson. The first is, and this gets me a little bit ahead to the initial, to the Geese case. And in that case, which we think is indistinguishable from our case, the Geese plaintiffs described in the bankruptcy case as the begliers, the predecessors, to the begliers, asserted that they did not receive notice other than publication notice was having been given of the bankruptcy case. And in that case, and that was really undisputed, the issue came up on a motion to dismiss, and so the allegations made by the begliers would be the same as the Sixth Circuit took the case with that in the factual record. But there the district court said that the non-leasing errors were unknown, right? That they were unknown. You don't argue that old Ben didn't know about methane or methane's existence. That's not your argument. No, that's correct. Old Ben conveyed their mutual covenants, right? So that's not your argument. No, I'm sorry, Judge, you're correct. We aren't making that argument in connection with the old Ben Deed. What we are saying is that the claim there is contingent, speculative, and future because the nature of the claim itself would only come into being if multiple contingencies had occurred. Namely, that there would have to be a decision made to mine by the owner of the coal reserve. And secondly, that at the point in time when that decision is made, that Illinois Methane would not then be drilling for coal bed methane, or it could have done that previously and could have exhausted the drilling at that point. These contingencies, though, Mr. Scheer, these contingencies apparently did occur in as much as the claim now is for a substantial sum. So a lot of that that we would say that you argue they're conjectural and speculative, et cetera, actually, am I right that each of those did actually get triggered and therefore warrants a large payment today? That's been alleged in the state court action, Judge. I'm not conceding that anything is due in that case or that the factual allegations there are correct. It is true to say, to answer the court's question, there was a lawsuit filed in 2017, making those allegations that the contingencies have occurred. But the question is, when this decision was being made about the appropriateness of publication notice, it was 2002 and 2004. I get you. But at that time, I think this is Judge Larson's point, methane and its existence and a way to advise them by something other than publication existed. That wouldn't be conjectural, would it? I mean, we know who they are and that they still were in business, et cetera. We know methane. Yes, Your Honor, we know methane's identity. But what we don't know is whether or not that claim is ever going to occur. But don't they have a, I mean, you chose not to brief this question, but your opponent says, methane says our interest is a present interest in land. We have a present interest in land that has been recorded in a deed. And so if we have a present interest in land, even if we might not act on that land, we still have a present interest in the land. And so you needed to notify us, give us actual notice. And now you didn't brief that question here. They say it's a covenant running with the land. You chose not to brief that question and just to rely on your brief in the bankruptcy court. But if they're right about that, that this is a covenant running with the land, do you lose? Your Honor, I disagree respectfully with the point that we didn't brief it. That issue was raised in the bankruptcy court. They said it's a covenant running with the land and you said that's a legal issue that is undecided. And we point you to our briefs in the bankruptcy court. That's correct. It's not been decided. Right. But we don't. You're in the question of law. So why can't we decide it? We filed briefing in the bankruptcy court saying that it doesn't run with the land. But for purposes of the argument here as to whether or not publication notice was appropriate, we don't believe that that's a relevant issue. That would be decided later on in the litigation. Well, wait, why is that so? So let's say that if I had an easement or if nothing had an easement, could you extinguish an easement? Which is a present interest in land. Could you extinguish an easement through publication notice if you knew who was the easement holder? I suppose it depends on the terms of the of the easement. And does the easement involve the assertion of a what would be at the time of in back in 2002, a contingent or speculative claim? I see. So so even though it presently burdens one state and benefits the other state, you can extinguish it because. So say it's an easement for someone to come onto my land to hunt geese. But nobody's ever come onto my land to hunt geese and there haven't been geese around in a long time. There might never be geese. Yes. You would say even though it's a present recorded interest in land, the fact that there have been geese around in a long time means you wouldn't have to notify them. Other than by publication. Yes, we would. That's correct. OK. And I would and I would reiterate that we we dispute that and we don't we've reached it fully in the in the in the bankruptcy court as to why it's not a covenant that runs with the land. But if it were, you still don't concede. You still don't concede. Correct, Judge Larson. OK. So if I think I've adequately covered to this point why it is we think the delay rental obligation being contingent in the future falls within the holding of Mullane, that those kinds of things are adequately. Can I ask you one more question before your time expires? Other than Mullane, you have this language from Justice Jackson and Mullane, I think it's Justice Jackson. Do you have any case in which a present interest in land, so a covenant running with the land or an easement or something, present interest in land has been extinguished by notice publication on the ground that it's contingent or future? Because that seems to be a big distinction, whether or not you have a present interest in land. You've cited us a lot of cases coming out of tort law. Yes. You want to say a present interest in land that is triggered by some future contingency can can be extinguished simply by notice publication. And I'm wondering if you have any case to what's your best case to support that claim? We do not have one, Judge. It's directly on the point that you're raising. Okay. Thank you. All right. Mr. Van Winkle. May it please the court. Opposing counsel. My name is James L. Van Winkle. I'm the attorney for Illinois Methane LLC. It's an Illinois limited liability company that's been in existence since 1998. I think the facts of this case are such that it's obvious that a confirmation order of a Chapter 11 plan slash liquidation affecting the rights of claimants is radically different from a confirmation order affecting a 363 F sale under the bankruptcy code. Under the bankruptcy code, under 363 F, there are a number of procedural hoops that must be followed precisely because vested property interests cannot be affected without due process of law. The trial court properly placed burden upon Illinois, not Illinois Methane, but upon Alliance to demonstrate that they failed to meet that burden. They produced no evidence to demonstrate that Old Ben had conducted any type of examination of the records of their own records or of the records of the Hamilton County Recorder's Office. Even the district court followed that and affirmed that of fact. Findings of fact by the trial court cannot be disturbed unless clearly erroneous. Alliance can point to no fact to demonstrate that that finding of fact was clearly erroneous. In fact, what the record demonstrates is that even the minimal amount of effort by Old Ben or its bankruptcy partners to determine the interest in the real property would have easily revealed the interest of Illinois Methane. After all, Illinois Methane, along with its partner Illinois Minerals, paid Old Ben 2.6 million dollars on June the 12th, 1998, and less than 90 days later, Old Ben and Ziegler Coal merge in with AEI Resources to form Horizon. As a result, they had to know. The bankruptcy court, how could Old Ben not have known about the interest of Illinois Methane? And the answer is, they don't really argue that point. They don't dispute that they didn't, Old Ben, or Alliance now, Alliance doesn't dispute that Old Ben knew about methane's existence and that there was this, I suppose they would call it a personal contract, but they don't dispute that. They just say the nature of the agreement was such that it was so unlikely, so speculative, that it would, that payment would ever be due, that they didn't need to notify you. I disagree with their analysis, Judge, because if you read the context of the Old Ben deed, the Old Ben deed clearly made the covenants contained therein as covenants running with the land. They were both a benefit and a burden to the coal estate, as well as a benefit and burden to the methane gas estate. Those rights were property rights. Those property rights were of record in Hamilton County, Illinois. And any time a party seeks to affect the property rights under 363 F, a reasonably diligent search and investigation is required. And here, Alliance provided no evidence whatsoever of any diligence to determine the rights and give Illinois Methane appropriate notice. So, in this context, what Alliance is doing is trying to conflate the value of our rights with something being speculative. The value may not be determined, but our rights were clearly fixed in the deed that was a matter of public record to which Old Ben was a party. They were in privity with us. And to even highlight, if the court looks at the deed that Lexington Coal acquired from the bankruptcy estate, that deed was made expressly subject to all matters of record prior to the grantor acquisition date. The grantor acquisition date was September 2, 1998, less than 90 days after Old Ben had conveyed the rights to Illinois Methane. So, by their own documents, they admit that the coal rights were conveyed subject to this covenant. In real property law, a person is charged with whatever is of record and whatever can be ascertained by reasonable diligence. And in the case of a 363F sale, I think it is incumbent, as a matter of law, for the moving party to examine those real property records if you seek to affect the real property rights of an adverse party. I think the court's inquiry about an easement is exactly on point. An easement can be of record, even though it may not be used. It's still a real property right. And if you seek to eviscerate that through the court system without due process, the law is clear. That kind of an order is void ab initio. It doesn't affect the vested property rights. And that's exactly what we have here. And I contend... And so, is the dispositive question, in your view, whether this is a covenant running with the land? I don't think that's necessarily dispositive against Illinois Methane. I think it's absolutely depositive against Alliance, but the point being that it's a record title interest. You know, before the bankruptcy court, we had cited the Bergman case out from California, where the city had a development covenant on a particular piece of property. The developer filed bankruptcy. The developer had a 363S sale without notice to the city. And there the court said, no, that doesn't count. Even though it's not a covenant running with the land, these development covenants, it still gave the city a property interest that could not be affected without due process. Illinois Methane's rights to the delay rental covenant is a property interest, whether we call it a covenant running with the land or a personal covenant. It is still a property right, and you can't affect a person's property rights without due process. And here, the burden of proof was on Alliance, and Alliance failed to meet their burden of proof. They stood on their papers. They offered no evidence whatsoever and conceded that the transaction involving the 2.6 million dollars was within the Old Bend's records. That kind of thing tells you that with any degree of diligence, Alliance predecessors being Old Bend and AEI could have notified Illinois Methane of the transaction and the proposed sale, but they chose not to. Before the bankruptcy court, you know, Alliance argued that, well, it's a big case, it's a complicated case, there was expedience involved. The district court and the bankruptcy court both found that the complexity of the case, the expediency, is no excuse to trap on somebody's constitutional rights. It's a matter of property interests that need to be protected. In fact, if this court were to sustain what Alliance is arguing, it effectively creates a rule that says, well, when it comes to real property rights, you don't have to check the records, you don't have to do any kind of investigation. Just publish a notice in a newspaper, Eastern Kentucky or New York, hundreds and hundreds of miles away from where Illinois Methane conducted business, and say, yep, your rights have been wiped out. You forgot to read the New York Times or the Wall Street Journal or whatever it was that they published in. And that's simply not the law. I mean, if you go back and look at the Tulsa Professional Services versus Pope and the predecessors, those courts have decided that it requires a degree of diligence to ascertain the party's interest. You just simply can't say, well, we'll publish. And so I submit that in this particular case, Alliance is completely wrong. Alliance also argues that, you know, our rights were speculative. No, they weren't. They were vested in the deed. They were clearly of record. They cite the Exo Communications case. And, you know, that case is kind of instructive in the sense that the debtor filed bankruptcy. And at the time they filed bankruptcy, they checked their records and had contractual relations, but they owed no money to. And so they did not list them as a creditor, although Talegent did receive notice of the bankruptcy. Some months later, Talegent itself filed bankruptcy, and through its bankruptcy proceeding, it determined that payments that Talegent had made to the first debtor were within the 547 preference. And there the court said, well, that preference right was speculative, because if Talegent had filed bankruptcy 91 days after the payments, there would be no preference, or if they filed more than 90 days. So that's the nature of a speculative claim, because until Talegent filed bankruptcy, it had no right to go back against the first debtor. In this case, our rights were fixed. They also rely upon the Geese case to say that, well, it's race judicata. That was their opening argument before the bankruptcy court, that it's all race judicata, because the Geese case found that publication notice was appropriate. But Geese is far factually different. In the Geese case, they were fighting over money held by a bank in an escrow account that had the only name E. Begley attached to it, the bank had no idea who E. Begley was or who E. Begley's successors were. And as a result, the bank filed even an adversary case to determine ownership. And Judge Weiss correctly found that at the time of the adversary case, the E. Begley people were unknown, and that publication notice was sufficient. That's radically different from the instant situation where not only is our interest a matter of public record, but it was within the records of old Ben as in possession of the debtor. And it's even further highlighted by the fact that within the bankruptcy record, the Hamilton County Treasurer's Office was given notice of the Chapter 11 proceeding because they were claiming it for money due. That told old Ben and AEI that there were real property interests in Hamilton County. If you seek to affect those real property interests, notice is appropriate, and you just can't close your eyes and pretend that we don't exist. And that's exactly what Alliance would have this court do. So I submit to the court that within the context of this case, Geese is totally in the opposite. It is not precedential. It is not res judicata. Illinois Methane's rights, its vested property interests were not speculative. Value may have been unknown, but its rights were fixed. And accordingly, we asked the court to affirm the district court ruling, which affirmed the bankruptcy court ruling, finding that Alliance failed to meet its burden of proof, failed to establish that Illinois Methane was an unknown creditor whose identity could not be ascertained. It's not that we're really a creditor. We're a party in interest. We're a co-tenant in some degree with Alliance in terms of ownership of the coal. They own the solid coal. We own the methane gas. Now they want to affect our rights to the methane gas without any type of due process. And I think that's clearly erroneous on their part, and both the district court and the bankruptcy court decision should be affirmed. I thank the court. Are there any questions? It appears not. Okay. Thank you, Your Honor. Mr. Scheer? A couple of points here. First of all, I want to reiterate to the court that the bankruptcy judge limited our issues and our hearing to three issues, which did not include anything related to the nature of this alleged covenant running with the land. I'm sorry, the bankruptcy court limited what you could brief? I'm sorry, or the district court? The bankruptcy court. Okay. Judge Wise only wanted us to address three specific issues, abstention, subject matter jurisdiction, and due process relating to the notice. All the other issues, including the one as to whether or not this was covenant that runs with the land, she told us not to address. So we were limited. Wait, isn't that wrapped up with the due process question? Or did you say, I'd like to, or did one of you say, we'd like to address the nature of the property interest, and the bankruptcy court said no? We filed a motion to enforce. There were numerous defenses that were raised by Illinois Methane, one of them being that this is a covenant that runs with the land. We responded saying it is not a covenant that runs with the land, and then Judge Wise says we're not going to address any issues, those issues. We're only going to address abstention, and subject matter jurisdiction, and the notice, and not to address those other issues. That's why we didn't address it in the appeal. The other point I want to raise is that- Excuse me, excuse me, let's go back a minute. If you're addressing notice, don't you have to also address the nature of the interest? Which we did by pointing out its speculative and contingent nature. Right, but- Well, then it's all part of the same issue. If I can distinguish the Gies case briefly, is that okay, Judge? Did I answer your question or not? Yes, well, I don't think you answered the last part of what I said, which is that it's all part of the same issue. I mean, if you're going to brief notice, what kind of notice was required, you've got to address the nature of the interest. I understand the court's question, and my response is that the nature of the interest itself being one of being in the future and possibly not occurring or ever materializing at all is the thing that justifies notice by public interest. If it's a present interest in land, then this nature, the notion that it is in the future, it's just incompatible with it being in the future. In other words, you couldn't extinguish somebody's fee simple without giving actual notice. Surely you concede that. Then we could have an easement to come onto the land which maybe hasn't been exercised in a while. You might call that contingent or remote because nobody's done it in a while, but it's still a present interest in land. They own that right. Isn't the idea the nature of something being speculative or in the future just inconsistent with the idea of the party owning a present interest in land? If we find that there's a present interest in land, then your argument about it being speculative or in the future is just negated. Aren't they flip sides of the same coin? I guess I disagree with that, I think if it's given the nature of this delay rental obligation, we still believe that publication notice was appropriate. Let me ask one, the time has expired, but let me ask one more thing. It seems to me that the only thing that was speculative in this situation was whether or not old Ben would end up owing this rental to Methane. Methane's interest, it seems to me, was whatever it was and it was unchanging. Now, what's your thought about that? Well, that the interest could just as well have been non-existent because they could have been drilling before the decision was ever made to mine, or there could be no coal bed methane left, so that whether that eventuality would ever occur, it may never materialize. Therefore, what's really being, if applied to Alliance in this case, it's really applying this reasonable foreseeability standard that the third and the fifth and the eighth circuits have all rejected with respect to these kinds of claims. Wait, is that in your tort, those are in your tort cases? They are, your honor. Okay. All right, do we have anything further? If not, we appreciate the arguments both of you have given and we'll consider the case carefully.